UNITED STATES DISTRICT COURT
OF THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| SHELIA RAY, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) CASE NO. |
| VS. | ) |
| | ) |
| LANE COLLEGE, | ) |
| | ) HON. |
| DEFENDANT. | ) |
| | ) |
| | ) |

*There are no other prior or pending cases between these parties.*

## COMPLAINT

PLAINTIFF, SHELIA RAY, by and through her attorneys, CARLA D. AIKENS, P.L.C., submits the following Complaint against DEFENDANT, LANE COLLEGE.

## JURISDICTION

1. At all times relevant to this action Plaintiff was a resident of the State of Tennessee, County of Madison.

2. Defendant Lane College is a private, co-educational institution which has a continuous and systematic place of business in Madison County located at 545 Lane Ave, Jackson, Tennessee 38301.

3. All relevant actions giving rise to this complaint took place in Madison County, Tennessee.

4. This action is brought in this Court on the basis of federal question jurisdiction, pursuant to Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq.

5. Jurisdiction is proper pursuant to the Tennessee Human Rights Act ("THRA"), T.C.A. 4-21-101, et seq.

## VENUE

6. Venue is proper in the Western District of Tennessee pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment discrimination giving rise to Plaintiff's claims occurred in this District.

## STATEMENT OF FACTS

7. On or around September 2013, Plaintiff, Shelia Ray, was hired by Lane College, to work for Defendant as an Admissions Counselor, eventually being promoted to Associate Financial Aid Director.

8. Almost immediately after being hired, Plaintiff began to experience mental anguish from Regina Anderson.

9. Anderson would roll her eyes at Plaintiff and make faces behind Plaintiff's back.

10. Plaintiff reported the negative treatment she was receiving from Anderson to Human Resources, unfortunately, nothing was ever done about the situation as Anderson and the Director of Human Resources were friends.

11. Plaintiff's coworkers would frequently pick with her and when Plaintiff defended herself, she was always portrayed as the problem.

12. Plaintiff was treated so poorly that fellow coworkers asked her why every time they come to her door Ms. Anderson would roll her eyes and make faces. One asked, "What is the problem?"

13. Anderson would constantly and deliberately miss work deadlines, causing Plaintiff to have to complete not only her own work, but Ms. Anderson's work as well.

14. Plaintiff was apart of AR meetings, reconciliation, and Second Chance Pell Experiment meetings until she started to receive mistreatment from Tangela Poole, who eventually removed Plaintiff from those committees.

15. On or around April 2022, Plaintiff attended a meeting with Ms. Boyd, Ms. Anderson, Ms. Biggs, and Ms. Bond. During the meeting Plaintiff raised an issue that she was one of the only employees doing any work.

16. Plaintiff was told to "get over it".

17. On or around May 2022, Anderson went to Ms. Bond angrily making comments such as: "Ms. Ray filed a complaint on me"; "She is crazy as hell"; and "She constantly emailed Ms. Poole back and forth no one is responding to that."

18. On or around April or May, 2022, Plaintiff called HR to inform them that the doctor had advised her to take time off.

19. On the call with HR, Tracey Mebane, Plaintiff was informed that her complaints had gone unread and that the negative treatment she was victim to was due to a communication breakdown, that had nothing to do with a "hostile working environment"

20. Not only was Plaintiff subjected to negative treatment, she was also given a lower raise than the work study coordinator, Brittany Bond, and Ibby Ibrahim, despite having longer tenure than both of them.

21. Plaintiff also received less than the average salary for her position.

22. Plaintiff was informed by HR that she had used 74 hours of sick time and still had 306 hours available.

23. However, just a week later, Plaintiff was told she had no more sick time and no report of her time could be produced due to a "glitch" in the system.

24. On or around August 8th, Plaintiff was informed by a coworker that her sick leave was taken from her.

25. After several disagreements with Anderson and Poole, the tension between Plaintiff and the two individuals escalated.

26. Plaintiff's blood pressure increased tremendously, causing her left eye to close, and when open, her vision became blurry.

27. Plaintiff decided to see a therapist, who opined that Plaintiff has experienced workplace harassment as a result of the negative remarks and verbal insults she was frequently faced with.

28. Plaintiff's therapist administered several assessments which indicated that Plaintiff is suffering from severe depression, anxiety, and post traumatic stress from the negative work environment.

29. Plaintiff continues to suffer from her injuries and has required the care of a therapist weekly and is scheduled to see a neurologist, among other treatment.

30. Plaintiff believes she was treated differently than her other coworkers, due to the darker complexion of her skin.

31. Defendant failed to take actions to prevent the harassment and the discrimination which caused Plaintiff to suffer from severe injuries.

32. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT I
**DISCRIMINATION ON THE BASIS OF RACE/COLOR IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e *et seq*. ("Title VII")**

33. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

34. At all material times, Defendant was an employer, and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

35. Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to harass or discriminate an employee on the basis of that employee's race or skin color.

36. A respondeat superior relationship existed because Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct Plaintiff's daily work activity, as alleged in the statement of facts.

37. Plaintiff is an African American, darker-complexioned woman, and, as a result, are members of a protected class pursuant to Title VII.

38. Plaintiff was subjected to offensive communication and/or conduct on the basis of her membership in this protected class.

39. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

40. Plaintiff notified Defendant, through its agents/Management, of the unwelcomed conduct and communication and Defendant failed to remedy the unwelcomed conduct or communication.

41. The unwelcomed conduct or communication was intended to or in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, or offensive work environment, as alleged in the statement of facts.

42. As a proximate result of the Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

43. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

44. Plaintiff requests the relief as described in the Prayer for Relief below.

## COUNT II
### HARASSMENT ON THE BASIS OF RACE/COLOR IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e *et seq*. ("Title VII")

45. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

46. At all material times, Defendant was an employer, and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

47. Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to harass or discriminate against an employee on the basis of that employee's race or skin color.

48. A respondeat superior relationship existed because Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct Plaintiff's daily work activity, as alleged in the statement of facts.

49. Plaintiff is an African American, darker-complexioned woman, and, as a result, is a member of a protected class pursuant to Title VII.

50. Plaintiff was subjected to offensive communication and/or conduct on the basis of her membership in this protected class.

51. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

52. Plaintiff notified Defendant, through its agents/Management, of the unwelcomed conduct and communication and Defendant failed to remedy the unwelcomed conduct or communication.

53. The unwelcomed conduct or communication was intended to or in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, or offensive work environment, as alleged in the statement of facts.

54. As a proximate result of the Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

55. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

56. Plaintiff requests the relief as described in the Prayer for Relief below.

## COUNT III
## RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e *et seq*. ("Title VII")

57. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

58. At all material times, Defendant was an employer and Plaintiff an employee, covered by, and within the meaning of Title VII.

59. Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to retaliate against an employee for engaging in protected activity.

60. A respondeat superior relationship existed Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct Plaintiff's daily work activity, as alleged in the statement of facts.

61. Plaintiff engaged in protected activity when she took the following actions, including but not limited to, reporting to Defendant harassment on the be basis of race/color by her co-workers.

62. Defendant, through its employees, had knowledge that Plaintiff engaged in protected behavior, because, among other things, several of them witnessed the conduct and were the individuals to whom Plaintiff reported the harassment and discrimination.

63. Defendant and/or its agents took adverse employment actions against Plaintiff, including but not limited to requiring her to return to work despite the mistreatment she has continually experiencing, not accommodating her, failing to promote her, paying her less than others who had less tenure and experience, and making the situation with her colleagues worse until the point that she became physically ill.

64. But for Plaintiff's participation in protected activity, Defendant would not have taken said adverse employment actions against Plaintiff.

65. Defendant and their agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

66. Plaintiff notified Defendant and their agents of the unwelcomed conduct or communication and Defendant failed to remedy the unwelcomed conduct or communication.

67. As a proximate result of Defendant's retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

68. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

69. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IV
## RETALIATION IN VIOLATION OF THE TENNESSEE HUMAN RIGHTS ACT ("THRA") T.C.A. 4-21-101, ET SEQ.

70. Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

71. At all material times, Plaintiff was an employee, and Defendant was an employer covered by, and within the meaning of the Tennessee Human Rights Act, TCA 4-21-101 et seq.

72. Defendant's conduct, as alleged herein, violated Tennessee Human Rights Act, TCA 4-21-101 et seq., which makes it unlawful to retaliate against an employee for reporting harassment and/or discrimination because of the employee's gender.

73. A respondeat superior relationship existed because Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff, and the authority to direct Plaintiff's daily work activity.

74. Plaintiff is an African American, darker-complexioned woman and as such is a member of a protected class.

75. Plaintiff engaged in protected activity when she took the following actions, including but not limited to, reporting to Defendant harassment and discriminatory employment practices.

76. Defendant, through their employees, had knowledge that Plaintiff engaged in protected behavior, because, among other things, several of them witnessed the conduct and were the individuals to whom Plaintiff reported the harassment and discrimination.

77. Defendant and/or its agents took adverse employment actions against Plaintiff, including but not limited to requiring her to return to work despite the mistreatment she has continually experiencing, not accommodating her, failing to promote her, paying her less than others who had less tenure and experience, and making the situation with her colleagues worse until the point that she became physically ill.

78. But for Plaintiff's participation in protected activity, Defendant would not have taken said adverse employment actions against Plaintiff.

79. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

80. Plaintiff notified Defendant and its agents of the unwelcomed conduct or communication and Defendant failed to remedy the unwelcomed conduct or communication.

81. As a proximate result of Defendant's retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

82. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

83. Plaintiff requests relief as described in the Prayer for Relief below.

## **RELIEF REQUESTED**

PLAINTIFF, Shelia Ray, RESPECTFULLY REQUESTS that this Court enter judgment against Defendant as follows:

1. Compensatory damages;
2. Exemplary damages;
3. An award of lost wages and the value of fringe benefits, past and future;
4. An award of interest, costs, and reasonable attorney fees; and
5. An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

                                            Respectfully Submitted,

Dated: _____

                                            /s/ Carla D. Aikens_____
                                            Carla D Aikens (P69530)
                                            *Attorney for Plaintiff*
                                            615 Griswold Ste. 709
                                            Detroit, MI 48226
                                            carla@aikenslawfirm.com

UNITED STATES DISTRICT COURT
OF THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| SHELIA RAY, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) CIVIL ACTION NO. |
| VS. | ) |
| | ) |
| LANE COLLEGE, | ) |
| | ) HON. |
| DEFENDANT. | ) |
| | ) |

## **JURY DEMAND**

NOW COMES Plaintiff, SHELIA RAY, and hereby demands trial by jury.

Respectfully Submitted,

Dated: August 17, 2022

/s/ Carla D. Aikens_____
Carla D Aikens (P69530) *pro hac vice*
CARLA D. AIKENS, P.L.C.
*Attorney for Plaintiff*
615 Griswold Ste. 709
Detroit, MI 48226
carla@aikenslawfirm.com